IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NATHANIEL CLARKE,** | : | CIVIL ACTION NO. 3:20-CV-31 |
| Petitioner | : | (Judge Conner) |
| v. | : | |
| **CLAIR F. DOLL, in his official Capacity as Warden of the York County Prison,** | : | |
| Respondent | : | |

## MEMORANDUM

Petitioner Nathaniel Clarke filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Clarke argues that the length of his mandatory pre-removal detention under 8 U.S.C. § 1226(c) has become unreasonable and that due process entitles him to an individualized bond hearing before an immigration judge. Before the court are Clarke's habeas petition; the report of Magistrate Judge Joseph F. Saporito, Jr., recommending that the court grant Clarke's petition; and respondent's objection to the report. For the reasons that follow, we will overrule respondent's objection, adopt Judge Saporito's report and recommendation, and order that Clarke receive an individualized bond hearing within 30 days.

I.      **<u>Factual Background and Procedural History</u>**[1]

Clarke has been a lawful permanent resident of the United States since 1989 when, at the age of 20, he was admitted as a child of a United States citizen. In 1992, Clarke was convicted of burglary and robbery in Georgia and sentenced to five years in prison.[2] In 2008, Clarke was convicted of battery involving family violence in Georgia and sentenced to 12 months in prison.[3]

A decade later, on December 11, 2018, Immigration and Customs Enforcement ("ICE") officers arrested Clarke at his home in Pennsylvania and charged him with deportability due to his past criminal convictions. Specifically, Clarke was charged as deportable for having been convicted of two or more crimes involving moral turpitude, <u>see</u> 8 U.S.C. § 1227(a)(2)(A)(ii); an aggravated felony, <u>see</u> <u>id.</u> § 1227(a)(2)(A)(iii); and a crime of domestic violence, <u>id.</u> § 1227(a)(2)(E)(i). Clarke was transported to York County Prison, where he has been continuously detained pursuant 8 U.S.C. § 1226(c).

---

[1] Neither party objects to Judge Saporito's statement of relevant facts, which accurately summarizes the pertinent background of this case. Accordingly, in the interest of judicial economy, we adopt Judge Saporito's summary as our own.

[2] Clarke alleges that the charges arose out of an attempt to retrieve his personal belongings from an apartment he had shared with his girlfriend before they broke up.

[3] The immigration judge noted in an interim order that the notice to appear erred in recounting this 12-month prison sentence. The immigration judge observed that certain documentation, not present in the record before this court, indicated that Clarke was sentenced not to 12 months of imprisonment, but to 14 days of imprisonment, followed by 12 months of probation. (<u>See</u> Doc. 1 at 92 n.1). The sentence actually served by Clarke, however, is immaterial to our disposition of this habeas petition.

2

On January 27, 2019, an immigration judge issued an interim order rejecting some of the charges of removability but sustaining others. Specifically, the immigration judge rejected charges that Clarke's robbery and family-violence battery convictions were aggravated felonies and that his family-violence battery conviction was a crime of domestic violence. The immigration judge concluded, however, that Clarke's burglary conviction was an aggravated felony, sustaining removability under Section 1227(a)(2)(A)(iii), and that his robbery and family-violence convictions were crimes of moral turpitude, sustaining removability under Section 1227(a)(2)(A)(ii). (See Doc. 1 at 92-100). On May 17, 2019, Clarke received a merits hearing, at which an immigration judge found him removable on the same bases set forth in the interim order, denied his requests for relief from removal under various immigration statutes and the Convention Against Torture, and ordered his removal to Liberia. (Doc. 1 at 103-21). Clarke appealed that decision to the Board of Immigration Appeals ("BIA"). His appeal remains pending.[4]

On January 7, 2020, Clarke filed the instant habeas petition pursuant to 28 U.S.C. § 2241, positing that his detention had become unreasonably long and seeking an individualized bond hearing. The petition was fully briefed, and on June 3, Judge Saporito issued a report recommending that we grant Clarke's

---

[4] Some portion of this period on appeal to the BIA is attributable to a technical error. On August 22, 2019, Clarke's case was remanded because a recording of the May 17, 2019, merits hearing and the immigration judge's oral decision were missing from the record. (Doc. 1 at 127). The issue was resolved and the case was recertified to the BIA on September 9, 2019. (Doc. 1 at 129–30).

3

petition and order an individualized bond hearing to occur within 30 days. Respondent objects to Judge Saporito's recommendation.

**II.     Legal Standard**

When a party objects to a magistrate judge's report and recommendation, the district court undertakes *de novo* review of the contested portions of the report. See E.E.O.C. v. City of Long Branch, 866 F.3d 93, 99 (3d Cir. 2017) (quoting 28 U.S.C. § 636(b)(1)); see also FED. R. CIV. P. 72(b)(3).  We afford "reasoned consideration" to any uncontested portions of the report before adopting them as the decision of the court.  City of Long Branch, 866 F.3d at 100 (quoting Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987)).

**III.     Discussion**

Clarke has been detained at York County Prison since December 11, 2018, pursuant to 8 U.S.C. § 1226(c).  (Doc. 1 at 2).  That statute requires the government to detain aliens convicted of certain crimes during removal proceedings.  8 U.S.C. § 1226(c).  Although some immigration detention provisions authorize release on secured bond or conditional parole while removal proceedings are pending, Section 1226(c) does not.  See Santos v. Warden Pike Cty. Corr. Facility, 965 F.3d 203, 207 (3d Cir. 2020) (comparing 8 U.S.C. § 1226(c)(2) with 8 U.S.C. § 1226(a)(2)).  Clarke contends that his prolonged pre-removal detention under Section 1226(c) has become unreasonable and violates the Due Process Clause of the United States Constitution.  (See Doc. 1).

In his thorough and thoughtful report, Judge Saporito first canvasses the governing law concerning Section 1226(c), which has, as Judge Saporito notes, "evolved significantly." (Doc. 12 at 4-9 (chronicling Demore v. Kim, 538 U.S. 510 (2003), Diop v. ICE/Homeland Sec., 656 F.3d 221 (3d Cir. 2011), Chavez-Alvarez v. Warden York Cty. Prison, 783 F.3d 469 (3d Cir. 2015), and Jennings v. Rodriguez, 583 U.S. ___, 138 S. Ct. 830 (2018))). Judge Saporito acknowledges that the United States Supreme Court's recent decision in Jennings abrogated the Third Circuit Court of Appeals' decisions in Diop and Chavez-Alvarez to the extent they read an implicit time limitation into Section 1226(c)'s mandatory detention provision. (See id. at 6-8 (citing Guerrero-Sanchez v. Warden York Cty. Prison, 905 F.3d 208, 222 & n.11 (3d Cir. 2018))). But he opines, as many other courts also have, that Jennings does not preclude an *as-applied* constitutional challenge to the length of Section 1226(c) detention based on the facts of a given case. (Id. at 8-9 (collecting cases)).

The report applies the following factors to decide whether Clarke's detention had become unreasonable:

> (1) whether detention has continued beyond the average times necessary for completion of removal proceedings which were identified in Demore; (2) the probable extent of future removal proceedings; (3) the likelihood that removal proceedings will actually result in removal; and (4) the conduct of both the alien and the government during the removal proceedings.

(Id. (quoting Hernandez v. Sabol, 823 F. Supp. 2d 266, 273 (M.D. Pa. 2011))). Judge Saporito determined that the first two factors—the duration of Clarke's detention and "the prospect of an additional undefined period of further detention" while he pursued his pending appeal before the BIA—strongly favor Clarke. (Id. at 14). He

5

finds the third and fourth factors to be a wash, since there is no indication that Clarke's BIA appeal is frivolous or that either party acted in bad faith in delaying the proceedings. (See id.) After weighing these factors, Judge Saporito concludes that Clarke has a due-process right to an individualized bond hearing.

Respondent objects to this conclusion, claiming that any delay in this case is attributable to Clarke's own "litigation decisions in seeking relief from his removal." (Doc. 14 at 6). Respondent invokes a handful of district court cases as support for this principle, including Santos v. Lowe, No. 1:18-CV-1553, 2019 WL 1468313 (M.D. Pa. Apr. 3, 2019), for its statement that while a detainee "certainly has the right to pursue all available avenues to combat his removal, post-Jennings, [the detainee] does not have the right to parlay the resulting delay into a bond hearing." (Doc. 14 at 6-7 (quoting Santos, 2019 WL 1468313, at *4 (quoting Coello-Udiel v. Lowe, No. 3:17-CV-1414, 2018 WL 2198720, at *4 (M.D. Pa. May 14, 2018)))). Respondent also contends that the length of detention is not constitutionally suspect here because Clarke's immigration case has "proceeded at a reasonable pace" and there is "no evidence of unreasonable delay by the government." (Id. at 6-7 (collecting cases)).

We agree in full with Judge Saporito's cogent analysis and will overrule respondent's objection. We write separately only to account for a change in the legal landscape since the time the report issued and respondent's objection was filed. On July 7, 2020, the Third Circuit decided Santos v. Warden Pike County Correctional Facility, 965 F.3d 203 (3d Cir. 2020), which, *inter alia*, reversed a district court decision on which respondent has placed much emphasis. The court in Santos confirmed that as-applied due-process challenges to mandatory detention

6

under Section § 1226(c) survive Jennings.  See Santos, 965 F.3d at 208-10.  The court then adopted a "nonexhaustive" list of factors from Diop and Chavez-Alvarez for use in determining whether a petitioner's detention "has grown unreasonable." Id. at 210-11.  Specifically, Santos holds that courts conducting an as-applied due-process analysis must consider the duration of detention ("[t]he most important factor") as well as the likelihood that detention will continue, the reasons for the delay, and whether the petitioner's conditions of confinement "are 'meaningfully different[]' from criminal punishment."  Id. at 211 (second alteration in original).

     Importantly, the court rejected the suggestion made by respondent here that detention cannot be considered unreasonable if its duration is "directly tied" to a petitioner's attempts to seek relief from removal.  (Doc. 14 at 7-8 (citing Santos, 2019 WL 1468313, rev'd by Santos, 965 F.3d 203)); see also Santos, 965 F.3d at 211. The court reiterated what it had said just five years earlier in Chavez-Alvarez: that "we do not hold an alien's good-faith challenge to his removal against him, even if his appeals or applications for relief have drawn out the proceedings," and that "counting this extra time as reasonable . . . would effectively punish [an alien] for pursuing applicable legal remedies."  Santos, 965 F.3d at 211 (second alteration in original) (quoting Chavez-Alvarez, 783 F.3d at 475, 476-77).  By finding that the petitioner was entitled to a bond hearing even when there was no evidence of bad faith by the government, id. at 212, the court effectively refuted respondent's overarching suggestion *sub judice* that its good faith and the "reasonable pace of proceedings" defeat Clarke's petition, (see generally Doc. 14 at 3-10).

7

Although styled differently, Judge Saporito's pre-<u>Santos</u> report speaks directly to three of the four <u>Santos</u> factors. Judge Saporito finds that the duration of Clarke's detention (approximately 18 months at the time of the report and more than 20 months today) weighs in favor of granting habeas relief. (Doc. 12 at 11-12 (collecting cases)); <u>see</u> <u>Santos</u>, 965 F.3d at 211, 212. He observes that, since Clarke is awaiting a ruling from the BIA which could then be appealed to the Third Circuit, Clarke is likely to be detained for an additional period of time. (Doc. 12 at 12-13); <u>see</u> <u>Santos</u>, 965 F.3d at 211, 212. And he concludes that the delay in Clarke's removal proceedings is not attributable to bad faith or improper conduct by either party. (<u>Id.</u> at 13-14); <u>see</u> <u>Santos</u>, 965 F.3d at 211, 212. We agree with Judge Saporito that all of these factors support the conclusion that the length of Clarke's detention has grown unreasonable and that he is now entitled to a bond hearing.

The only factor not considered by Judge Saporito—whether Clarke's detention at York County Prison is akin to criminal punishment—further supports the report's ultimate recommendation. The court in <u>Santos</u> explained that "if an alien's civil detention under § 1226(c) looks penal, that tilts the scales toward finding the detention unreasonable." <u>Santos</u>, 965 F.3d at 211 (citing <u>Chavez-Alvarez</u>, 783 F.3d at 478). And the Third Circuit has already said that the conditions of confinement for immigration detainees at York County Prison look penal. <u>See</u> <u>Chavez-Alvarez</u>, 783 F.3d at 478 (noting that petitioner was "being held in detention at York County Prison with those serving terms of imprisonment as a penalty for their crimes"); <u>see also</u> <u>Santos</u>, 965 F.3d at 212-13 (holding that "[d]espite its civil label," petitioner's two-and-a-half-year detention at Pike County prison "alongside

8

convicted criminals" was "indistinguishable from criminal punishment"). This factor too supports Judge Saporito's conclusion that Clarke's mandatory detention without a bond hearing has become constitutionally unreasonable.

## IV.     Conclusion

For all of these reasons, we will overrule respondent's objection and adopt Judge Saporito's report and recommendation. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:     August 24, 2020